ENTERED ON THE DOCKET
DATE 2|18|94

U.S.
DIS

FEB 18  11 48 AM '94

ITY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARSHALL E. SCHMITT, TERRY L. MORGAN, and RICHARD J. MARCHEWKA, on behalf of themselves and other employees similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) CIVIL ACTION |
| v. | ) Case No. 91-4213-DES ) |
| THE STATE OF KANSAS, | ) ) ) |
| Defendant. | ) ) ) |
| JEFFREY L. COLLIER, ROBERT S. McKINZIE, CHARLES L. KOHLER, and STEPHEN P. O'ROURKE, on behalf of themselves and other employees similarly situated, | ) ) ) ) CIVIL ACTION ) ) Case No. 91-4215-DES |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE STATE OF KANSAS, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

This matter is before the court on defendant the State of Kansas' ("the State") motion for summary judgment and plaintiffs' cross-motion for partial summary judgment. This is a consolidated

action in which plaintiffs, past and present employees of the Kansas Highway Patrol ("KHP"), Kansas Bureau of Investigation ("KBI"), and Kansas Wildlife and Parks Department ("KWPD"), seek recovery under the Fair Labor Standards Act ("FLSA") for alleged unpaid straight time and overtime. Plaintiffs make the following three claims: (1) all plaintiffs were wrongfully denied straight time pay at their regular rate for all hours worked between 160 and 171; (2) plaintiffs who were paid shift differential were wrongfully denied appropriate overtime pay; and (3) plaintiffs who were paid longevity pay in a given year and who received overtime pay in that year were wrongfully denied appropriate overtime pay.

The State moves for summary judgment (Doc. 393) on plaintiffs' straight time and longevity-related overtime claims. For the reasons set forth in this Memorandum and Order, the State's motion (Doc. 393) is denied.

Plaintiffs move for partial summary judgment (Doc.394) on each of their three claims as to liability only. For the reasons set forth in this Memorandum and Order, plaintiffs' motion (Doc. 394) is granted in part and denied in part.

## II.   BACKGROUND

There are 401 plaintiffs. Each plaintiff is or was a full-time classified employee of the State employed in a law enforcement position partially exempt under 29 U.S.C. § 207(k). The 401 plaintiffs can be separated into the following two groups: (1) the *Collier* plaintiffs, composed of 341 KHP troopers, sergeants, and

pilots; and (2) the *Schmitt* plaintiffs, composed of 42 KBI Special Agents I, II, and III and 18 Conservation Officers in the KWPD.

## A. Plaintiffs' Claim I: Uncompensated Straight-time

The State designated a deviation from the standard 40 hour work week for all plaintiffs. Plaintiffs work up to 171 non-overtime hours in a single 28-day work period. Accordingly, plaintiffs are not due overtime pay until they work more than 171 hours in a single 28-day work period.

A state administrative regulation, K.A.R. 1-5-21, requires employees to be paid on either a monthly or hourly salary basis at the option of the appointing authority. On approximately the first of each month, Kansas pays each plaintiff 1/12 of the annual salary earned in the preceding pay period. The total annual compensation when divided by the total annual non-overtime hours worked for each plaintiff has always been greater than minimum wage. Additionally, none of the plaintiffs has ever received less than minimum wage when the amount of salary for the work period is divided by the amount of non-overtime hours worked in that work period.

Each class of positions in the classified service is assigned to a pay range on the State Pay Plan. The Director of the Division of Personnel Services within the Department of Administration is required to prepare schedules showing the salary range for each class of positions. The Director recommends to the Governor salaries for each class of classified positions.

3

The State Pay Plan consists of four schedules: annual, monthly, hourly, and overtime. Each entry in the monthly schedule is 1/12th the corresponding entry in the annual schedule; each entry in the hourly schedule is 1/2080 of the corresponding entry in the hourly annual schedule; and each entry in the overtime schedule is 1 1/2 times the corresponding entry in the hourly schedule.[1]

The standard work week for all classified state employees is 40 hours, except that any agency head may designate a deviation from the standard for particular classes of employees. All three agencies involved in this lawsuit have designated deviations of 171 hours in a 28 day work period for the classes of employees to which plaintiffs belong.

The Kansas State Troopers Association ("KSTA") is the exclusive representative for the *Collier* plaintiffs. The KHP and the KSTA have entered into several Memorandum of Agreements ("MOAs") since 1985. The 1986-1987 MOA was in effect from October 1, 1986, to July 1, 1987, and was renewed under its terms for successive one-year periods through December 1, 1988. The 1988-1989 MOA was in effect from December 1, 1988, to July 1, 1989, and

---

[1]     The parties disagree as to whether the hourly schedule applies to plaintiffs. Defendant contends that the monthly schedule compensates plaintiffs for up to 171 hours of work in a given 28-day pay period. Accordingly, defendant argues that plaintiffs' regular rate is their monthly salary divided by the number of non-overtime hours worked in that period. Plaintiffs contend that the monthly salaries compensate only up to 160 hours of work in a given 28-day period. Plaintiffs further contend that the hourly rate found on the hourly annual schedule is their regular rate (increased by shift differential and longevity pay where appropriate).

4

was renewed under its terms for successive one-year periods until January 1, 1992.  The 1991-1993 MOA was in effect on January 1, 1992, and shall remain in effect until July 1, 1993.

The MOAs for 1986-1987, 1988-1989, and 1991-1993, contain the following "SALARIES" section:

### SALARIES

The Kansas Highway Patrol shall pay all troopers in the appropriate unit in accordance with the approved State pay plan.

The MOAs also contain the following "WORK SCHEDULE" section:

### WORK SCHEDULE

Within each 28 day work period the standard work day/shift schedule shall be a continuing cycle of six work days of nine consecutive hours each followed by three days off, with one additional scheduled work day during each 28 day work period.

The Patrol and Association recognize and agree certain troopers may be assigned to work day/shift schedules other than the standard and that the responsibilities of the organization and hours actually worked by an individual trooper may necessitate deviations from the standard work day/shift schedule. Such deviations from the standard day/shift schedule may be made, both in days worked and hours in a day, for justifiable organizational needs, or by mutual agreement between the affected trooper and the appropriate supervisor, or due to extra hours worked during any given 28 day work period.

The *Schmitt* plaintiffs (i.e., the KBI agents and KWPD conservation officers) neither negotiated through a bargaining representative nor entered into negotiated MOAs.

5

## B.  Plaintiffs' Claim II:  Shift Differential

A Kansas administrative regulation, K.A.R. 1-5-28, authorizes agencies to pay a shift differential to classified employees.  The shift differential rate was $.20 per hour until June 30, 1989, and $.25 per hour from July 1, 1989, to the present.

In each MOA since 1985, the State has agreed to pay shift differential to eligible KHP troopers.  For example, Article VI § 4 of the 1988 MOA provides as follows:

> The Superintendent of the Kansas Highway Patrol has determined that the employees of the appropriate unit are eligible for shift differential.  The Patrol and the Association agree that members of the appropriate unit that are eligible for overtime, shall receive shift differential pay in accordance with the provisions of K.A.R. 1-5-28; however, this is subject to obtaining the necessary approvals and funding which will be requested by the Patrol.

The State has considered shift differential when calculating plaintiffs' overtime pay since June 18, 1992. Specifically, shift differential pay has been entered into the KIPPS central computer system since June 18, 1992, using the appropriate FLSA screens so that the calculation of the regular rate includes shift differential for all *Collier* plaintiffs.

## C.  Plaintiffs' Claim III:  Longevity Pay

A Kansas statute, K.S.A. 75-5541, authorizes a once per year longevity payment.  The longevity payment does not accrue until the employee has completed ten years of satisfactory service with the State.  Thereafter, the longevity payment is made annually following the employee's service anniversary date.

6

Longevity pay increases a plaintiff's regular rate of pay. Therefore, once it is received, all overtime paid in the previous 12 months is recalculated and additional overtime is paid. The State's formula for recalculating overtime pay upon receipt of longevity pay is as follows:

> Longevity pay divided by 2080 hours = increase in hourly rate. Increase in hourly rate multiplied by total hours of overtime in preceding twelve months multiplied by .5 = additional overtime pay.

Prior to implementing the longevity pay policy, the State sought and received clarification from the Department of Labor regarding the proper method for including longevity pay into the overtime pay calculation. Ron Dean, Regional Director of the Wage and Hour Division of the Department of Labor, and Terry Burger, Kansas City District Director for the Department of Labor, orally approved the State's formula for recalculating overtime pay upon receipt of a longevity payment.

## III. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(c).** The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1985). The substantive law identifies which issues are material. *Id.* at 248. A dispute over

7

a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1985). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (interpreting Rule 56(e)).

Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Celotex*, 477 U.S. at 322. Such a complete failure of proof on an

8

essential element of the nonmovant's case renders all other facts immaterial. *Id*. at 323.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)(stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id*. at 250.

## IV. DISCUSSION

Plaintiffs make three claims under the FLSA. First, the State failed to pay them for straight time owed for all hours worked between 160 and 171. Second, the State failed to include shift differential in the regular rate when it calculated plaintiffs' overtime pay. Third, the State miscalculated plaintiffs' longevity-related overtime pay.

The State moves, and plaintiffs cross-move, for summary judgment. The State moves for summary judgment as to all of plaintiffs' claims generally, on the grounds that they are barred by the Tenth and Eleventh Amendments to the United States

9

Constitution, and as to plaintiffs' claims for unpaid straight time and longevity-related overtime specifically.  Plaintiffs move for partial summary judgment as to all three of their claims specifically, but only as to liability.

## A.   The Tenth Amendment

The State argues that the Tenth Amendment provides immunity from plaintiffs' FLSA suit.[2]  In support, the State relies primarily on *National League of Cities v. Usery*, 426 U.S. 833 (1976), *Gregory v. Ashcroft*, __ U.S. __, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991), and *New York v. United States*, __ U.S. __, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992).

In *National League of Cities*, the Supreme Court held that the Commerce Clause does not authorize Congress to enforce the FLSA's minimum-wage and overtime provisions against the states "in areas of traditional governmental functions."  *National League of Cities*, 426 U.S. at 852.  The State seems to argue that since plaintiffs are law enforcement personnel, and law enforcement is a traditional governmental function, the Tenth Amendment provides immunity from plaintiffs' FLSA suit.  However, in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985), the Supreme Court explicitly overruled *National League of Cities*.  In *Garcia*, the Supreme Court abandoned the "traditional governmental function" test as unworkable.  The Court held that "the principal and basic

---

[2]    The Tenth Amendment provides as follows: "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

10

limit on the federal commerce power is that inherent in all congressional action -- the built-in restraints that our system provides through state participation in federal governmental action." *Garcia*, 469 U.S. at 556. After *Garcia* "[s]tates must find their protection from congressional regulation through the national political process, not through judicially defined spheres of unregulable state activity." *South Carolina v. Baker*, 485 U.S. 505, 512 (1988). Thus, the Tenth Amendment's limitation on the federal Commerce Clause power is one of process rather than result. *Garcia*, 469 U.S. at 554. *See also Baker*, 485 U.S. at 512.

Nowhere does the State allege that it was deprived of any right to participate in the national political process. Further, nowhere does the State allege that it was singled out in a way that left it politically isolated and powerless. The court is unaware of any defect in the national political process sufficient to render the FLSA invalid under the Tenth Amendment.[3] Since there is no indication that the national political process operated defectively, *Garcia* instructs that the Tenth Amendment is not implicated. *See, e.g., Baker*, 485 U.S. at 512-513 (applying a similar analysis and concluding that "[w]here, as here, the national political *process* did not operate in a defective manner, the Tenth Amendment is not implicated").

---

[3] Defendant's failure to allege that it was in any way precluded from participating in the national political process amounts to a tacit concession that the process operated adequately. *Local 2203 v. West Adams County. Fire Protection District*, 877 F.2d 814, 821 n.9 (10th Cir. 1998)

11

Despite *Garcia* and the absence of any allegations of irregularity in the national political process, the State urges the court to find it immune from suit under the Tenth Amendment. Specifically, the State makes the following arguments: (1) *Garcia* is weak authority which soon will be overruled; and (2) the FLSA is an insufficient statement of Congress' intent to displace its Tenth Amendment immunity.

First, the State asks the court to revive the "traditional government function" test because of *Garcia's* inevitable demise. The State claims *Gregory v. Ashcroft* and *New York v. United States* evidence the Supreme Court's dissatisfaction with *Garcia*. These two cases neither explicitly nor implicitly reverse *Garcia*. *See, e.g., May v. Arkansas Forestry Com'n*, 993 F.2d 632, 636 (8th Cir. 1993); *Ahern v. State of New York*, 807 F. Supp. 919, 927 (N.D.N.Y. 1992), *aff'd*, 3 F.3d 581 (2d Cir. 1993). Indeed, both can be read in harmony with *Garcia*. *May*, 993 F.2d at 636. In short, *Garcia* remains good law, is directly relevant precedent, and explicitly abandons the "traditional government function" test. Therefore, the court refuses the State's invitation to ignore *Garcia* and apply the abandoned analysis from *National League of Cities*.

Second, the State argues that the FLSA does not satisfy the "plain statement" rule. Specifically, the State contends that in the FLSA "Congress has not expressed with sufficient clarity an intent to override the State's prerogative to establish workable wage and hour policies for its employees, especially as it pertains

12

to police protection." **Defendant's Memorandum In Support, p. 46.**
In *Gregory*, the Supreme Court held that "'Congress should make its
intention 'clear and manifest' if it intends to pre-empt the
historic powers of the States.'"  *Gregory*, 115 L. Ed. 2d at 424
(quoting *Will v. Michigan Dept. of State Police*, 492 U.S. 58, 65
(1989)).  The court is convinced that Congress clearly expressed
its intent that state law enforcement employees fall under the
aegis of the FLSA.  **See 29 U.S.C. § 203(e)(2)(C)** (defining
"employee" to include "any individual employed by a State [or a]
political subdivision of a State"); **29 U.S.C. §207(k)** (referring
specifically to individuals engaged in "law enforcement activities"
for state and local governments).  Thus, the court rejects
defendant's argument that Congress failed to express clearly its
intent to cover individuals hired by a State to provide police
protection.

Therefore, the court finds that requiring the State to
comply with the FLSA does not violate the Tenth Amendment.[4]

---

[4]    *Accord Reich v. State of New York*, 3 F.3d 581, 589-590
(2d Cir. 1993); *Biggs v. Wilson*, 1 F.3d 1537, 1543-1544 (9th Cir.
1993); *May v. Arkansas Forestry Com'n*, 993 F.2d 632, 635-636 (8th
Cir. 1993); *Parr v. State of California*, 811 F. Supp. 507, 511-512
(E.D. Cal. 1992); *Ahern v. State of New York*, 807 F. Supp. 919, 027
(N.D.N.Y. 1992), *aff'd*, 3 F.3d 581 (2d Cir. 1993); *Brinkman v.
Dept. of Corrections of Kansas*, 804 F. Supp. 163, 165 (D. Kan.
1992).  *Cf. Renfro v. City of Emporia, Kansas*, 948 F.2d 1529 (10th
Cir. 1991)(applying FLSA to municipality); *Bratt v. County of Los
Angeles*, 912 F.2d 1066, 1068 (9th Cir. 1990), *cert. denied*, __ U.S.
__, 111 S. Ct. 962 (1991)(applying FLSA to county probation and
child protection services).

## B. The Eleventh Amendment

The State next argues that the Eleventh Amendment provides immunity from plaintiffs' FLSA suit. This argument is meritless.

The Eleventh Amendment provides as follows: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State." The United States Supreme Court has interpreted the Eleventh Amendment to preclude a federal court from hearing a suit brought by a citizen against her own state. *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). However, "[t]he Eleventh Amendment bar to suit is not absolute." *Id.* States may consent to be sued in federal court or Congress may abrogate their constitutional immunity. *Id.*

In the instant case, the State did not consent to be sued in federal court. Accordingly, the State cannot be sued in this court unless Congress abrogated its immunity.

Congress may abrogate the states' Eleventh Amendment immunity "only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985). *See also Dellmuth v. Muth*, 491 U.S. 223, 230 (1989)(explaining that "evidence of Congressional intent must be both unequivocal and textual").

In the FLSA, Congress has made its intention to abrogate the State's immunity unmistakably clear. The FLSA applies to "any

14

individual employed by a State [or a] political subdivision of a State." **29 U.S.C. § 203(e)(2)(C).** The Act provides that "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." **29 U.S.C. § 216(b).** Congress defined a "public agency" to include state governments and agencies. **29 U.S.C. § 203(x).** Thus, Congress expressly authorized suits under the FLSA in federal courts by state employees against state governments. An additional unmistakable indication of Congress' intent is the 1985 amendment to the FLSA by which Congress allowed the states time to conform to FLSA procedures and adjust to the financial burden they would face following the Supreme Court's decision in *Garcia.* **Pub. L. No. 99-150, 99 Stat. 787 § 2(c)(1)(1985), 29 U.S.C. § 216 (historical note)(1988).** *See also Hale v. State of Arizona*, 993 F.2d 1387, 1392 (9th Cir. 1993)(en banc); *Brinkman v. Dept. of Corrections of State of Kansas*, 804 F. Supp. 163, 165 (D. Kan. 1992).

Therefore, the court finds that there is unequivocal, textual evidence of Congress' intent to abrogate the State's Eleventh Amendment immunity.[5]

---

[5]     *Accord Reich*, 3 F.3d at 591; *Hale v. Arizona*, 993 F.2d 1387, 1391-92 (9th Cir. 1993)(en banc), *cert. denied*, 114 S. Ct. 386 (1993); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1323-24 (9th Cir. 1991); *Ahern*, 807 F. Supp. at 927; *Brinkman*, 804 F. Supp. at 165; *Spencer v. Auditor of Public Accounts*, 705 F. Supp. 340 (E.D. Ky. 1989). *Contra American Federation of State, County & Municipal Employees, etc. v. Corrections Dept. of New Mexico*, 783 F. Supp. 1320, 1323 (D.N.M. 1992).

## C.   Claim I: Unpaid Straight Time

The essence of plaintiffs' straight time claim is that throughout their employment the State has not compensated them at all for any hours worked between 160 and 171 per 28-day work period.   Plaintiffs' claim for unpaid straight time has two components: (1) unpaid straight time for periods in which plaintiffs worked no overtime; and (2) unpaid straight time for periods in which plaintiffs worked overtime.  The State moves, and plaintiffs cross-move, for summary judgment on this claim.

### 1.   Straight Time For Periods With No Overtime

The State argues that plaintiffs cannot prevail on their straight time claim, at least for work periods in which they worked no overtime, because plaintiffs admit that their total compensation for any period divided by the hours worked in that period always exceeds the minimum wage.   In support, the State forcefully argues that, according to case law[6] and DOL Letter Opinions[7], the general rule is that an employee cannot state a

---

[6]     Defendant relies on the following: *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405, 1417 (N.D. Ill. 1990); *Dove v. Coupe*, 759 F. Supp. 167, 171 (D.C. Cir. 1985); *Travis v. Ray*, 41 F.Supp. 6, 8 (W.D. Ky. 1941). The following cases are in accord:   *Hensley v. MacMillan Bloedel Containers*, 786 F.2d 353, 357 (8th Cir. 1986); *Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 301-303 (N.D.N.Y. 1978).

[7]     Defendant relies chiefly on the following two Letter Rulings: the September 12, 1988, Ruling found at Attachment 6 to Defendant's Motion for Summary Judgment; and the October 22, 1987, Ruling found at Attachment 5 to Defendant's Motion for Summary Judgment.   Additionally, defendant relies on the following four Letter Rulings: Opinion Letter No. 1560, [2 Wages-Hours] Lab.L.Rep.

16

claim under the FLSA if her average wage, for a period in which she worked no overtime, exceeds the minimum wage. The court acknowledges that there is a body of authority which supports the State's "general rule."

The State relies heavily on a DOL Letter Ruling dated October 22, 1987.[8] This Letter Ruling addresses a municipality's question regarding its straight time obligations under the FLSA for law enforcement officers who are partially exempt under § 207(k). Specifically, the Letter Ruling discusses the municipality's obligation to compensate for hours worked between 160 and 171 in a given 28-day work period. In pertinent part, the Letter Ruling provides as follows:

> The City has chosen a 28-day work period for the purpose of applying the provisions of section 7(k) of FLSA. During these 28 days, police officers are normally scheduled for twenty, 8-hour tours of duty, or a total of 160 hours for the work period. However, under the terms of a collective bargaining agreement, the police officers must report for a roll-call formation 15 minutes before the start of each 8-hour tour of duty. You are concerned that these additional 5 hours (20 X 1/4 hour) of work are not being properly compensated under FLSA.
>
> As you were advised in telephone conversations with a member of my staff on March 4 and March 6, the law enforcement employees to whom you refer have been properly compensated under

(CCH) ¶ 31, 363 (Mar. 3, 1981); Opinion Letter No. 535, [1961-1978 Transfer Binder] Lab. L. Rep. (CCH) ¶ 30,522 (Nov. 6, 1966); Opinion Letter No. 100 [1961-1978 Transfer Binder] Lab. L. Rep. (CCH) ¶ 30,640 (May 31, 1962); and Opinion Letter No. 24, [1961-1978 Transfer Binder] Lab. L. Rep. (CCH) ¶ 30,533 (Oct. 3, 1961).

[8] This Letter Ruling is Attachment 5 to the State's motion for summary judgment.

17

> FLSA when, for any work period during which they have worked less than the applicable maximum hours standard, they have received at least the minimum wage ($3.35 an hour) for *all* of their hours worked.
>
> For example, <u>a police officer who is paid at a rate of $10.50 an hour for 160 hours ($10.50 X 160 hours = $1,680) is paid in compliance with FLSA even though he or she actually works a total of 165 hours during a 28-day work period ($3.35 X 165 hours = $552.75)</u>.

(Emphasis added). The State argues that this opinion establishes that it paid all plaintiffs in accordance with the FLSA.

Plaintiffs contend, however, that the body of authority on which the State relies is not controlling here because there is contrary Tenth Circuit case law directly on point. In *Lamon v. City of Shawnee*,[9] this court addressed the question of straight time compensation under the FLSA. Plaintiffs were law enforcement personnel within the 29 U.S.C. § 207(k) partial exemption. Accordingly, they could work 171 hours in a 28-day work period before they were entitled to overtime compensation. Like plaintiffs in the instant case, the *Lamon* plaintiffs argued that the city failed to compensate them for hours worked in excess of 160 in a given 28-day period.[10] Defendant argued that its failure

---

[9]     754 F. Supp. 1518 (D. Kan. 1991), *rev'd on other grounds*, 972 F.2d 1145 (10th Cir. 1992), *cert. denied*, __ U.S. __, 113 S. Ct. 1414 (1993).

[10]     In *Lamon*, it was undisputed that plaintiffs received no compensation at all for meal times.  This court found that plaintiffs' meal times did not exceed 10 hours in any given 28-day work period.  Thus, plaintiffs' claim was for 10 unpaid hours worked between 160 and 171 in each 28-day period.  Similarly, plaintiffs' claim in the instant case is for up to 11 unpaid hours worked between 160 and 171 in a given 28-day period.

18

to compensate plaintiffs for hours in excess of 160 was not a violation of the FLSA. This court, noting the FLSA's remedial purpose and the Supreme Court's admonition that the FLSA must be liberally construed, rejected defendant's argument and held plaintiffs were entitled under the FLSA to be compensated at their regular hourly rate for all hours worked between 160 and 171. Specifically, this court wrote as follows:

> The court notes defendant's extensive briefing of its argument that there is no express requirement under the FLSA that plaintiffs be paid for the hours between 160 and 171 which are statutorily exempt from the normal requirement that these hours are compensable at an overtime rate. However, the court finds defendant's argument to be unreasonable in view of the remedial purpose of the FLSA. <u>The court finds the requirement that plaintiffs be paid compensation at their regular hourly rate to be implicit in the framework of the FLSA. The court further notes that defendant has conceded that if plaintiffs work more than 171 hours, hours worked between 160 and 171 are compensable at plaintiffs' normal hourly rate. The court finds there to be no principled reason for the requirement that plaintiffs work over 171 hours before they are entitled to be paid for time spent working between 160 and 171 hours.</u>

*Lamon*, 754 F. Supp. at 1521 n.1 (emphasis added). Although the Tenth Circuit reversed on other grounds, it affirmed this court's decision to compensate unpaid hours between 160 and 171 at the regular rate. *Lamon v. City of Shawnee*, 972 F.2d 1145, 1155 (10th Cir. 1992), *cert. denied*, __ U.S. __, 113 S. Ct. 1414 (1993). Indeed, the Tenth Circuit specifically endorsed not only the decision to compensate plaintiffs at their regular hourly rate but also the very reasons given in the footnote supporting the decision

to compensate plaintiffs at their regular rate. *Id.* (writing that "[w]e affirm this decision [to compensate at the regular hourly rate] for the reasons expressed in the district judge's opinion." This court set out the reasons for its decision in footnote one. Thus, the Tenth Circuit could have been referring only to footnote one.) The Tenth Circuit also added that "as the district court held, even if the City is not required to pay overtime, *compensation for meal periods at a rate less than a regular wage would be contrary to FLSA.*" *Id.* (Emphasis added).

In *Lamon*, partially exempt plaintiffs were uncompensated for up to ten hours worked between 160 and 171 per 28-day work period. This court awarded plaintiffs compensation for these hours at their regular hourly rate. The Tenth Circuit clearly and explicitly affirmed the award. Plaintiffs contend that *Lamon* recognizes a § 207(k) partially exempt law enforcement employee's right to recover under the FLSA for hours worked, but for which she was unpaid, between 160 and 171 at her regular hourly rate regardless of whether she worked overtime hours in the same period. Accordingly, plaintiffs argue that, like the employees in *Lamon*, they are entitled to be compensated at their regular rate for all hours worked between 160 and 171, for which they claim they were unpaid, in a given 28-day work period. Therefore, plaintiffs argue that *Lamon* requires the court to reject the State's contention that plaintiffs cannot seek compensation at the regular rate for unpaid straight time where they have worked no overtime in that period.

The State has cited a considerable body of authority in support of its statement of the general rule.[11]  Plaintiffs have cited only two cases that are contrary to this rule.  However, unlike the State, plaintiffs have cited authority from the Tenth Circuit.  This authority is good law and relevant.  The State has failed to distinguish this authority.  Therefore, the court rejects the State's argument that plaintiffs are unable to state a straight time claim under the FLSA.  The court denies the State's motion for summary judgment to the extent it is based on this argument.

## 2.   Straight Time For Periods With Overtime

Plaintiffs argue that, even if the State's general rule applies here, the FLSA requires the State to compensate plaintiffs at their regular rate for all hours worked between 160 and 171 in periods in which they also worked overtime.

Plaintiffs cite to several DOL regulations which clearly support their argument: 29 C.F.R. §§ 778.315 and 317.[12]  In

---

[11]   In addition to the authority cited by the State, 29 C.F.R. § 778.322 also seems in accord.  Specifically, § 778.322 provides that "[i]n weeks in which no overtime is worked only the provisions of section 6 of the Act, requiring the payment of not less than the applicable minimum wage for each hour worked, apply so that the employee's right to receive $5.71 per hour [the regular rate] is enforceable only under his contract."

[12]   The DOL Letter Ruling dated October 22, 1987, which the court quotes on p. 17 of this Memorandum and Order, also supports their argument.  In pertinent part, the Letter Ruling provides as follows:

A different situation exists when a police officer works in excess of the applicable maximum hours standard for the work period, i.e. over 171 hours in a 28-day period.  Under these circumstances, the employee's regular rate of pay must be used to compute the proper compensation due under FLSA.  This is explained in section 778.315 of

21

these two regulations, the Administrator explains that an employer

has not paid overtime in accordance with FLSA unless the employer

has paid the employee at her regular rate for all straight time

worked in that period.

The first regulation, 29 C.F.R. § 778.315, provides

as follows:

> In determining the number of hours for which
> overtime compensation is due, all hours worked
> . . . by an employee for an employer must be
> counted. Overtime compensation, at a rate not
> less than one and one-half times the regular
> rate of pay, must be paid for each hour worked
> in the workweek in excess of the applicable
> maximum hours standard. <u>This extra
> compensation for the excess hours of overtime
> work under the Act cannot be said to have been
> paid to an employee unless all the straight
> time compensation due him for the nonovertime
> hours under his contract (express or implied)
> or under any applicable statute has been paid.</u>

(Emphasis added).

In pertinent part, the second regulation, 29 C.F.R.

§ 778.317, provides as follows:

> An agreement . . . to pay an employee whose
> maximum hours standard for the particular
> workweek is 40 hours, $5 an hour for the first
> 35 hours, nothing for the hours between 35 and
> 40 and $7.50 an hour for the hours in excess

---

Interpretative Bulletin, 29 C.F.R. Part 778 (copy enclosed).
This can be illustrated in the case of a police officer
who is paid $10.50 an hour and who must work during an
unscheduled tour of duty in addition to those which were
scheduled (21 X 8 1/4 hours = 173 1/4 hours worked).
Under FLSA, this employee must be paid at his or her
regular rate of $10.50 an hour for 171 hours ($1795.50).
This employee must also receive overtime compensation at
a rate of not less than one and one-half times the $10.50
hourly rate (1 1/2 X $10.50 X 2 1/4 (OT hours) = $35.44).
Therefore, the employee in this example should be paid
a total of $1830.94 ($1795.50 + $35.44) for the work period.

of 40 would not meet the overtime requirements
of the Act. Under the principles set forth in
§ 778.315, the employee would have to be paid
$25 for the 5 hours worked between 35 and 40
before any sums ostensibly paid for overtime
could be credited toward overtime compensation
due under the Act.  Unless the employee is
first paid $5 for each nonovertime hour
worked, the $7.50 per hour payment purportedly
for overtime hours is not in fact an overtime
payment.

The Tenth Circuit has held that regulations or
interpretations of the FLSA are "entitled to great weight."
*Mitchell v. Grentz*, 235 F.2d 621, 624-625 (10th Cir. 1956).*Cf.*
*Lamon*, 754 F. Supp. at 1520 ("the interpretation of an
administrative agency charged with issuing regulations pursuant to
a federal law has been held to be 'entitled to great weight and the
Court may properly resort to them for guidance')(quoting *Wirtz v.*
*Healy*, 227 F. Supp. 123, 130 (N.D. Ill. 1964)). Consequently, the
court finds direction in 29 C.F.R. §§ 778.315 and 778.317. They
are directly on point and the State has presented no contradictory
authority. Indeed, the State seems to admit that these two
regulations accurately state the law. **Defendant's Motion for**
**Summary Judgment pp. 37-38, filed September 17, 1993**. Thus, to the
extent the State moves for summary judgment as to this component of
plaintiffs' straight time claim, the State's motion is denied.

### 3.   The Nature of Plaintiffs' Monthly Payment

Plaintiffs' straight time theory of recovery is
based on their claim that they received no compensation for any
hours worked between 160 and 171.  The State contends that
plaintiffs' monthly payment is a salary which compensates them for

23

all non-overtime hours worked. Plaintiffs argue that the monthly payment compensates them only for the first 160 hours worked. The question for the court is whether the monthly payment the State paid each plaintiff was compensation for all non-overtime hours worked or only non-overtime hours worked up to 160.

The parties agree that all plaintiffs are classified employees and subject to the Plan. Thus, their monthly payment is determined by their respective positions on the Plan. Plaintiffs contend, without apparent opposition from the State, that the Plan became a part of their employment contracts.[13] The *Collier* plaintiffs have MOAs which explicitly provide that the State "shall pay all troopers . . . in accordance with the approved State pay plan." The *Schmitt* plaintiffs have no MOA but admit they are subject to the Plan.

Plaintiffs' claim stems from the manner in which the State formulated the Plan. They argue that, as configured over the relevant years, the Plan was based on a 40-hour workweek. They further argue that the State never adjusted the Plan to take into account the 11 additional non-overtime hours partially exempt law enforcement employees may have to work in a given 28-day period. As a result, they contend that the current system compensates them at an hourly rate for the first 160 hours worked, does not compensate them at all for hours worked between 160 and 171, and

---

[13] The State disagrees that it is obligated to pay plaintiffs in accordance with the hourly rate schedules from the State Pay Plan. The State argues that plaintiffs are salaried employees whose monthly payment covers all non-overtime hours worked.

24

compensates them at one and one-half (1.5) times their hourly rate for all hours worked over 171. Thus, plaintiffs frame their straight time claim in a manner that parallels *Lamon*.

The State's summary judgment motion is based on its contention that it pays plaintiffs a monthly salary, 12 times per year, which compensates them for all non-overtime hours worked. The State contends that the monthly salary covers all non-overtime compensation due for a period, regardless of whether plaintiffs worked 160 hours, 171 hours, or any number of hours between 160 and 171.

After thoroughly examining the parties' memoranda and attachments, the following facts are clear: (1) plaintiffs are law enforcement employees who are partially exempt under 207(k); (2) plaintiffs work up to 171 non-overtime hours per 28-day work period; (3) plaintiffs are subject to the Plan; (4) the Plan is a grid which consists of annual, monthly, hourly, and overtime rates; (5) plaintiffs have been assigned positions on that grid; and (6) plaintiffs have received monthly payments based on their positions on the grid. What remains at issue, however, is whether plaintiffs' monthly payments were compensation for all non-overtime hours worked per period. This unresolved issue is the crux of plaintiffs' straight time claim. Therefore, the court concludes there is a genuine issue of material fact which precludes the court from granting summary judgment for either defendant or plaintiffs. Accordingly, the court denies both parties' motions for summary judgment as to plaintiffs' unpaid straight time claim.

### D.  Claim II: Shift Differential

The FLSA requires the State to pay plaintiffs overtime compensation at no less than one and one-half (1.5) times their regular rate.  **29 U.S.C. § 207(a) & (k).**  It also requires the State to include shift differential in its calculation of plaintiffs' regular rate.  *Bay Ridge Operating Co., Inc. v. Aaron*, 334 U.S. 446, 468-469 (1948).  *See also* **29 C.F.R. § 778.207(b).** The *Collier* plaintiffs claim the State incorrectly calculated their overtime pay by failing to include shift differential pay in their regular rate.  These plaintiffs move for summary judgment as to the State's liability on their shift differential claim.  They do not move for summary judgment as to damages.

The State concedes that the *Collier* plaintiffs are entitled to a shift differential premium of either $.20 or $.25 when they work a night shift.  The *Collier* plaintiffs contend that at least 315 KHP trooper plaintiffs have worked the night shift under circumstances in which they also were entitled to overtime.

Plaintiffs have shown that the State has a duty to include shift differential in their regular rate when it calculates their overtime pay.  Indeed, the State admitted this obligation when, in its response to plaintiffs' motion, it agreed with plaintiffs' following two contentions: (1) plaintiffs are entitled to be paid shift differential; and (2) shift differential is to be included in the regular rate for overtime calculations.[14]

---

[14]    "The State agrees with Plaintiffs' contentions at pages 59-60 of their Memorandum regarding the *Collier* troopers' entitlement to be paid shift differential or that it is to be

26

Plaintiffs argue that the State failed to include shift differential when it calculated their overtime pay. In support, plaintiffs have submitted pay records for five troopers. Plaintiffs submit these records as an example of the pay practices generally applied by the State to all *Collier* plaintiffs.[15] They argue that these records demonstrate the State did not consider shift differential when making its overtime calculations. These records plainly show that the State paid overtime at one and one-half (1.5) times the hourly rate corresponding to each plaintiff's pay range. It is clear that the State did not add shift differential to this hourly rate.[16] In response, the State comes forward with no evidence showing it included, or even considered, plaintiffs' shift differential in the overtime calculations. Indeed, nowhere does the State argue that it considered plaintiffs

included into the regular rate of pay for overtime calculation." **Defendant's Response to Plaintiffs' Motion for Summary Judgment p. 116, filed November 1, 1993.**

[15] The five plaintiffs are Keith Denchfield, Terry Parks, David Myers, Larry Mahon, and Todd Helm.

[16] The court notes that it remains an unsettled issue whether this hourly rate is the plaintiffs' regular rate of pay or merely a rate which the State used for administrative convenience when calculating overtime. The court further notes that this is a bifurcated trial. At this stage, the court is asked only if the State complied with § 207(e). That is, the court is asked only if the State considered shift differential in the regular rate when it calculated plaintiff's overtime. *Cf. McLaughlin v. McGee Bros. Co., Inc.*, 681 F. Supp. 1117, 1133 (W.D.N.C. 1988)(holding an employer's incomplete calculation of its employees' regular rate -- the employer omitted their monthly production bonuses -- to be a violation of the FLSA's overtime provision). The court need not determine whether the amount plaintiffs actually received in each period was greater or lesser than the amount they were entitled to receive under the FLSA for that period. At the next stage, the court will address the damages issue.

27

shift differential before June 18, 1992. Instead, the State (1) attacks the foundation for the pay records; (2) argues that the court must limit plaintiffs' motion to the five plaintiffs for which records have been submitted; and (3) contends that the amount of overtime it paid plaintiffs exceeds its obligations under the FLSA.

First, the State's foundation argument is meritless. The pay records submitted were produced by the State during discovery. Some courts have held this sufficient to clear the authentication hurdle. *McQueeny v. Wilmington Trust Co.*, 779 F.2d 916, 928-929 (3d Cir. 1985); *United States v. Black*, 767 F.2d 1334, 1340-1342 (9th Cir. 1985); *In re A.H. Robins Co.*, 575 F. Supp. 718, 725 (D. Kan. 1983). Additionally, the State has admitted the authenticity of all documents it produced to plaintiffs during discovery.[17] Further, the State's objection is not specific, as the pre-trial order seems to require. In short, this objection seems to be little more than another instance of the general foundation objection with which the State has peppered its response to plaintiffs' motion.

Second, the State argues that the court can grant relief only to the five plaintiffs who have submitted pay records, but not to the class of *Collier* plaintiffs as a whole. The court agrees with the State to the extent the State argues that an individual plaintiff cannot receive damages until he or she proves an

---

[17] **Defendant's Response to Plaintiffs' Second Request for Admissions.**

individual injury. However, the court disagrees with the State to the extent the State argues the court cannot grant summary judgment as to its failure to consider shift differential.

It is undisputed that plaintiffs are entitled to have their shift differential included in their overtime pay calculations. Plaintiffs move for summary judgment solely on the issue of whether the State included shift differential when it calculated their overtime. In support, plaintiffs submit a sample of their pay records to establish the State did not include shift differential in its calculations. These pay records are intended to establish a deficiency in the procedure which the State applied to all plaintiffs generally. Although plaintiffs did not submit pay records for each trooper who claims damages, plaintiffs did submit a sample sufficient to carry its initial burden. That is, the records submitted are sufficient to show that the State did not include shift differential in its standard overtime calculation. In response, the State has come forward with no evidence, specific or otherwise, which tends to show it included shift differential before June 18, 1992. Indeed, the only evidence the State provides indicates the State began considering shift differential as of June 18, 1992. This evidence does not demonstrate that the State considered shift differential prior to June 18, 1992, and, therefore, will not preclude summary judgment. *See Atlantic States Legal Foundation v. Universal Tool*, 735 F. Supp. 1404, 1408 (N.D. Ind. 1990)(noting that irrelevant facts do not preclude summary judgment). The court finds there is no proof which could support

29

a finding that the State considered shift differential prior to June 18, 1992. Therefore, the court has no basis on which to conclude there remains a genuine issue of material fact as to this issue.

Third, the State argues that it has no liability on this claim because the amount of overtime it paid plaintiffs far exceeds its obligations under the FLSA. The State's argument relates to the damages plaintiffs suffered as a result of the State's failure to consider shift differential. Specifically, the State argues that the base hourly rate used by the State far exceeded plaintiffs' actual regular rate. Therefore, the State concludes that even if it failed to consider shift differential, plaintiffs were not injured because the overtime pay they received was greater than that which the FLSA required the State to pay.

The State's argument is not relevant to the question of whether the State considered shift differential. It goes only to the issue of damages, whereas plaintiffs' motion presents only the issue of liability (whether the State considered shift differential). Although the State's argument eventually may prove meritorious at the damages stage of this bifurcated trial, it is unpersuasive now at the liability stage.

In summary, plaintiffs have come forward with evidence which shows that the State did not include shift differential in its calculation of overtime pay. The State has come forward with no evidence which demonstrates that it considered shift differential when it calculated plaintiffs' overtime. The only

evidence produced by the State shows that as of June 18, 1992, it began to include an employee's shift differential when it calculated her overtime. This is insufficient to establish that a genuine issue of material fact exists as to the liability question for periods prior to June 18, 1992. The court finds that plaintiffs carried their initial burden on liability. The court further finds that the State has not even addressed the liability question much less carried its burden of establishing a genuine issue of material fact. Therefore, the court grants plaintiffs' motion as to liability only.

## E. Claim III: Longevity Pay

Some of the 401 plaintiffs were entitled by Kansas statute, K.S.A. 75-5541, to receive an annual longevity payment. These plaintiffs claim defendant failed to recalculate accurately longevity-related overtime compensation. The State argues that its calculation of longevity-related overtime compensation was correct as a matter of law and, therefore, it is entitled to summary judgment on this claim. Plaintiffs argue that the State's calculation was incorrect as a matter of law and, therefore, they are entitled to summary judgment.

Pursuant to K.S.A. 75-5541 and K.A.R. 1-5-29, a state employee with at least 120 months of satisfactory service is eligible to receive an annual longevity payment. The amount of the payment is calculated by multiplying $40 by each full year of satisfactory service. The payment increases the regular rate for purposes of calculating overtime pay accrued over the previous 12

31

months. Since longevity pay increases an employee's regular rate of pay, and overtime is based on a percentage of the regular rate, the State must recalculate the overtime paid during the previous year to account for the late longevity-related adjustment to the employee's regular rate.

The State does not contest its obligation to recalculate overtime. Nor do plaintiffs dispute that the State actually recalculated overtime. Instead, the parties dispute whether the State applied the correct recalculation formula.

In recalculating the overtime due following a longevity pay distribution, the State applies the following formula:

> Longevity pay divided by 2080 hours = increase in hourly rate. Increase in hourly rate multiplied by total hours of overtime worked in preceding twelve months multiplied by .5 = additional overtime pay.

**Defendant's Memorandum in Support p. 25, filed September 17, 1993; Plaintiffs' Response to Defendant's Motion for Summary Judgment p. 11, November 1, 1993.** Plaintiffs argue that the State erroneously calculated their additional overtime pay by multiplying the product of the increased hourly rate and overtime hours by one-half (.5) instead of one and one-half $(1.5)$.[18] As a result of the State's

---

[18]     29 U.S.C. § 207(a) states a general rule requiring employers to pay overtime at a rate not less than one and one-half (1.5) times the regular rate. As 29 C.F.R. § 778.100 explains, "[§ 207(a)] prescribes . . . a general overtime rate of pay not less than one and one-half times the employee's regular rate which the employee must receive for all hours worked in any workweek in excess of the applicable maximum hours." In the instant case, plaintiffs are partially exempt § 207(k) law enforcement employees entitled to overtime compensation for all hours worked in excess of 171 hours in a given 28 day work-period.

32

decision to multiply the product by one-half (.5), plaintiffs argue they received only one-third the overtime compensation due on their longevity payments.

The State's formula is virtually identical to the formula found in 29 C.F.R. § 778.209. Essentially, the § 778.209 formula is as follows: (1) express the bonus payment as an hourly rate; (2) multiply the hourly bonus rate found in step one by one-half (.5); and (3) multiply this product (i.e., one-half the hourly bonus rate) by the number of statutory overtime hours worked. More specifically, § 778.209 provides that one-half (.5), as opposed to the normal one and one-half (1.5), is the proper factor when calculating the additional overtime attributable to a bonus payment.

The State claims that § 778.209's use of one-half (.5) as the proper factor justifies its own use of one-half (.5) in its longevity-related overtime formula. The State argues that the soundness of its formula is further evidenced by the approval given it by several representatives of the Department of Labor ("DOL"). Although the State's formula is virtually identical to 29 C.F.R. § 778.209, and although representatives of the DOL may have endorsed the State's formula, the court is convinced the State incorrectly used one-half (.5) instead of one and one-half (1.5).

The court cannot accept the State's arguments because they are based on a faulty premise. The State's arguments are all based on the assumption that the longevity payment is a bonus. The § 778.209 formula applies only to bonuses. It does not apply to

compensation that cannot be characterized as a bonus. Further, the approval given by the DOL representatives appears to have been based on a belief that longevity pay amounts to a bonus payment for the purposes of § 778.209. Thus, for § 778.209 to justify the recalculation formula, as the State contends, the longevity payment must be a bonus.

Whether the longevity payment is a bonus requires an examination of Kansas law. K.S.A. 75-5541 establishes longevity pay. K.S.A. 75-5541(a) provides that classified employees "shall receive additional compensation as provided by this section, which shall be referred to as longevity pay, under the terms and conditions and subject to the limitations prescribed by this section." The State contends that the terms and conditions of K.S.A. 75-5541 unequivocally establish longevity pay as a bonus, thereby justifying its decision to multiply the product by a factor less than one and one-half (1.5). In support, the State points to K.S.A. 75-5541(e) which provides that "[l]ongevity pay shall be in addition to any other compensation payable by law . . . ." This language is similar to language found in 29 C.F.R. § 778.208. In pertinent part, § 778.208 provides that "[b]onus payments are payments made in addition to the regular earnings of an employee." The State argues that by using language similar to that of 29 C.F.R. § 778.208, the Legislature clearly expressed its intent to provide longevity pay as a bonus.

The State reinforces its argument by pointing to advice offered by several representatives of the DOL. It is undisputed

34

that Ron Dean, the Regional Director of the Wage and Hour Division of the Department of Labor, and Terry Burger, the Kansas City District Director for the Department of Labor, approved the recalculation formula used by the State. The State contends that their involvement insulates the formula from scrutiny. The court acknowledges that the DOL's interpretation of its regulations is to be given "controlling weight unless that interpretation is plainly erroneous or inconsistent with the regulation." *United States v. Larinoff*, 431 U.S. 864, 872 (1976). However, unlike in *United States v. Larinoff*, the initial question here involves interpretation of Kansas, not federal, law. The underlying issue is whether longevity pay is a bonus. In order to resolve this issue, it is necessary to construe K.S.A. 75-5541. The State has cited authority which requires only that the court give "controlling weight" to the DOL's interpretation of its own regulations. The State has cited no authority which would require the court to defer to the DOL's construction of Kansas law. Accordingly, the DOL's assumption that the longevity payment is a bonus is not controlling.

The court disagrees with the State's assertions that K.S.A. 75-5541(e) clearly evidences the Legislature's intent to establish longevity pay as a bonus for the purposes of 29 C.F.R. § 778.209. Although K.S.A. 75-5541(e) contains one sentence which is similar to 29 C.F.R. § 778.208, the court does not accept that this similarity stands as unequivocal evidence of the Legislature's intent to provide longevity pay as a bonus. Instead, the court

finds that in terms of whether longevity pay is to be treated as a bonus, K.S.A. 75-5541(e) is ambiguous at best. It is plausible to read K.S.A. 75-5541(e) as providing longevity pay as an additional component of an employee's regular earnings as opposed to a bonus offered on top of an employee's regular earnings. An expanded examination of K.S.A. 75-5541(e) supports this reading. In pertinent part, K.S.A. 75-5541(e) provides that "[l]ongevity pay shall be in addition to any other compensation payable by law, or increase therein, to which an officer or employee may become entitled or for which such employee may become eligible." The State places great emphasis on the identity between 28 C.F.R. § 778.209 and K.S.A. 75-5541(e) of the following three words: "in addition to." The State's emphasis on this identity sacrifices other reasonable interpretations which are not necessarily confined to the substance of these three words. For instance, K.S.A. 75-5541(e) reasonably can be read as simply precluding the State from arguing that it satisfied its obligation to extend longevity pay when it provided an eligible employee with a raise or bumped her a step or grade on the pay scale. In this manner, one can read K.S.A. 75-5541(e) as anticipating and precluding State attempts to circumvent its obligations under K.S.A. 75-5541. In fact, this reading is more consistent with the directive found in K.S.A. 75-5541(f) than is the State's.[19] Therefore, the court finds that

---

[19]   In pertinent part, K.S.A. 75-5541(f) provides as follows: "[t]he provisions of this section shall be liberally construed to maximize benefits to those officers or employees who have provided experience and faithful service to the state of Kansas in order to encourage officers and employees to remain in the service of the

K.S.A. 75-5541(e) reasonably can be read as establishing longevity pay as a distinct component of an employee's regular earnings as opposed to a bonus offered on top of an employee's regular earnings.

Because K.S.A. 75-5541 is unclear as to whether longevity payments are to be treated as bonuses, the court finds it is open to construction. "The cardinal rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature govern when the intent can be ascertained from the statute." *State ex rel. Stephan v. Kansas Racing Commission*, 792 P.2d 971, 978 (Kan. 1990). *See also Collins v. Douglas County*, 822 P.2d 1042, 1048 (Kan. 1991); *Brabander v. Western Co-op Elec.*, 811 P.2d 1216, 1218 (Kan. 1991). "In determining intent, the court may look at the purpose to be accomplished, the necessity and effect of the statute, and the effect the statute may have under the various constructions suggested." *Kansas Racing Commission*, 792 P.2d at 979. *See also Matter of Estate of Estes*, 718 P.2d 298, 301 (Kan. 1986); *Arredondo v. Duckwall Stores, Inc.*, 610 P.2d 1107, 1110 (Kan. 1980)(quoting *Brown v. Keill*, 580 P.2d 867, 871 (Kan. 1978).

In the instant case, the court's task is made easier by a provision of the statute itself. K.S.A. 75-5541(f) provides a clear expression of the Legislature's purpose in establishing longevity pay. In pertinent part, K.S.A. 75-5541(f) provides as follows:

state."

37

> The provisions of this section shall be
> liberally construed to maximize benefits to
> those officers or employees who have provided
> experience and faithful service to the state
> of Kansas in order to encourage officers and
> employees to remain in the service of the
> state.

In this subsection, the Legislature has clearly directed that
K.S.A. 75-5541 be construed to reward long-term employees in order
to encourage long-term employment.

The State urges the court to endorse its construction of
K.S.A. 75-5541. However, the State's construction is clearly
inconsistent with the Legislature's purpose and intent as evidenced
by K.S.A. 75-5541(f). The State's decision to multiply the product
of the increased hourly rate and the overtime hours worked by a
factor of one-half (.5) instead of one and one-half (1.5) required
the State first to construe K.S.A. 75-5541 as providing a bonus
within the meaning of 28 C.F.R. §§ 208 and 209. This construction
is based on a restrictive reading of K.S.A. 75-5541(e) which
produces a result unsupported by any of the remaining subsections
of K.S.A. 75-5541. For example, K.S.A. 75-5541(a) refers to
longevity pay not as a bonus but as "additional compensation."
Indeed, not only is the State's construction unsupported by other
subsections but it is clearly contrary to K.S.A. 75-5541(f). The
State's reading allowed it to pay one-third the longevity-related
overtime benefits that would be owed absent such a reading.
Instead of construing K.S.A. 75-5541 in a manner that maximizes an
eligible employee's benefits, the State reads the statute so as to
minimize them. By characterizing the longevity payment as a bonus,

38

the state acted contrary to the stated purpose of the statute: maximize benefits accruing to long-term employees in order to reward past, and encourage future, long-term service to the state. The court rejects the State's construction.

In short, the State's formula for recalculating longevity-related overtime is inadequate because it is based on a mischaracterization of the nature of longevity pay. The Legislature clearly directed all parties to construe liberally the statute granting longevity pay so as to maximize the benefits accruing to the designated employees. The State's recalculation formula is based on a construction of that statute which minimizes, not maximizes, the benefits accruing to the designated employees. Therefore, the court rejects the State's argument that its recalculation formula is correct as a matter of law.[20] Accordingly, the State's motion for summary judgment is denied insofar as it is based on plaintiffs' longevity-related overtime claim. The court further holds that insofar as plaintiffs argued that the State's recalculation formula is incorrect as a matter of law, their summary judgment motion is granted.

## V. CONCLUSION

After thoroughly examining the parties' memoranda and attachments, and for the reasons set forth in the body of this Memorandum and Order, the court (1) denies the State's motion for summary judgment (Doc. 393) and (2) denies-in-part and grants-in-

---

[20]   The court also denies the State's request for attorneys' fees and court costs incurred in the defense of this claim.

part plaintiffs' cross-motion for partial summary judgment (Doc. 394).

**IT IS BY THE COURT THEREFORE ORDERED** that the State's motion for summary judgment (Doc. 393) is denied.

**IT IS FURTHER ORDERED** that plaintiffs' cross-motion for partial summary judgment (Doc. 394) is denied as to their straight time claim.

**IT IS FURTHER ORDERED** that plaintiffs' cross motion for partial summary judgment (Doc. 394) is granted as to their shift differential claim.

**IT IS FURTHER ORDERED** that plaintiffs' cross-motion for partial summary judgment (Doc. 394) is granted as to their longevity-related overtime compensation claim.

Dated this __17__ day of February, 1994, at Topeka, Kansas.

DALE E. SAFFELS
United States District Judge

DES:eiu

40